515 F.2d 1010
 89 L.R.R.M. (BNA) 2891, 169 U.S.App.D.C. 293
 AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent.
CONTINENTAL TRAILWAYS, INC., Petitioner,
v.
CIVIL AERONAUTICS BOARD, Respondent,
National Association of Motor Bus Owners, Intervenor.
 Nos. 74-1572, 74-1600.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 10, 1975.
Decided July 11, 1975.
 
 Gary Green, Washington, D. C., for petitioner in No. 74-1572.
 Howard S. Boros, Washington, D. C., with whom Mark Pestronk, Washington, D. C., was on the brief for petitioners in No. 74-1600 also entered an appearance for intervenor in No. 74-1600.
 Peter R. Steenland, Jr., Atty., Civ. Aeronautics Bd., with whom Thomas J. Heye, Gen. Counsel, O. D. Ozment, Deputy Gen. Counsel, Glen M. Bendixsen, Associate Gen. Counsel, Robert L. Toomey, Atty., Civ. Aeronautics Bd., and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief for respondent. Carl D. Lawson, Atty., Dept. of Justice, also entered an appearance for respondent.
 
 
 1
 Ken W. Strobel, Dodge City, Kan., filed a brief on behalf of Air Midwest, Inc. and Corresponding Attorneys for the cities and civil interests of Hutchinson, Great Bend and Dodge City, urging affirmance.
 
 
 2
 David N. Brictson, Denver, Colo., entered an appearance for intervenor in No. 74-1572.
 
 
 3
 Before BAZELON and LEVENTHAL, Circuit Judges, and WEIGEL,* United States District Judge for the Northern District of California.
 
 
 4
 WEIGEL, District Judge.
 
 
 5
 Under a certificate issued by the Civil Aeronautics Board, Frontier Air Lines, Inc. has the right and duty to provide air service to three small cities in Kansas which lie on its route between Wichita and Denver, Colorado. Since 1970, however, Frontier's duty to serve the three cities (Hutchinson, Great Bend, and Dodge City) has been suspended by the Board on condition that substitute service be provided. The substitute service has been supplied by Air Midwest, Inc., an air taxi operator, which does not hold a certificate but to which the Board has granted an exemption from the normal certification requirements. This Court has previously approved such suspension/substitution arrangements. Air Line Pilots Association, Inc. v. Civil Aeronautics Board, 161 U.S.App.D.C. 199, 494 F.2d 1118 (1974).
 
 
 6
 Like Frontier before it, Air Midwest has not found the service profitable, even though it uses smaller planes and has lower operating costs. In 1973, Air Midwest applied to the Board for a subsidy, estimating that it would need $131,891 in the following year to break even on the service. Air Midwest further estimated that, if it ceased to provide substitute service and Frontier were forced to resume serving the three cities itself under its certificate obligation, Frontier would need a subsidy of some $406,000.
 
 
 7
 The Board approved the subsidy sought by Air Midwest and because the Board recognized that only certificated carriers are eligible for subsidy, arranged that the funds be paid initially to Frontier, the certificate holder and the entity ultimately responsible for keeping the service running. Under the arrangement, which the Board describes as a "flow-through" subsidy, the money is to be passed on by Frontier to Air Midwest for use in supporting the operations of Air Midwest. See CAB Order No. 74-1-78, Tentative Finding # 2, Joint Appendix at 21, made final in CAB Order No. 74-4-77, J.A. at 45. Petitioner in No. 74-1572, Air Line Pilots Association, International, objects that the flow-through subsidy is to a non-certificated air carrier and that in awarding it the Board has exceeded its authority.
 
 
 8
 The respondent Board argues at the outset that the Air Line Pilots Association (ALPA) does not have "a substantial interest" in the flow-through subsidy order and, therefore, lacks standing under 49 U.S.C. § 1486(a) to seek review. ALPA is the collective bargaining representative for some 50,000 pilots and other flight crew members, including the flight crew members of Frontier (and all other certificated airlines) but not those of Air Midwest. The organization's interest is in having Frontier resume service on the Hutchinson-Great Bend-Dodge City route, since that eventuality would increase job opportunities for ALPA members. As the Board itself found, Frontier will be forced to resume the service if Air Midwest cannot continue, and Air Midwest probably cannot continue unless it is subsidized. J.A. at 13; Respondent's Brief at 23-25. We conclude, therefore, that ALPA's interest in the employment opportunities of its members gives it standing here.[1]
 
 
 9
 Whether the Civil Aeronautics Board may award a flow-through subsidy is a question of first impression. As all parties concede, the sole statutory authority for subsidizing air service is contained in § 406(a) of the Federal Aviation Act, 49 U.S.C. § 1376(a), set out in the margin.[2] That section empowers the Board to fix rates of compensation for the transportation of mail by aircraft, and like its precursor in the Civil Aeronautics Act of 1938, it "was intended to be the sole device by which subsidy was to be provided." Mail Transportation by Noncertificated Carriers, 18 C.A.B. 201, 206 (1953). Section 406(a) provides for subsidies to "holder(s) of a certificate authorizing the transportation of mail by aircraft,". As noted above, Air Midwest is not certificated.
 
 
 10
 The legality of the subsidy is also governed by § 406(b)(3) of the Act, 49 U.S.C. § 1376(b)(3), which directs that, in determining the amount of any subsidy to be awarded, the Board shall consider the "need" of the carrier to be subsidized. This requirement "thus poses as the initial question for the Board whether the financial condition of the carrier is such that it needs a subsidy or has no need for one." Delta Air Lines, Inc. v. Summerfield, 347 U.S. 74, 78, 74 S.Ct. 350, 352, 98 L.Ed. 513 (1954). Need must be evaluated only in the context of the entire operations of the carrier to be subsidized, and a subsidy may be given only to the extent of that need. Summerfield, supra, 347 U.S. at 79, 74 S.Ct. 350. The measure of the need is the amount which, "together with all other revenue of the air carrier," is sufficient for maintenance and development of the carrier consistent with the objectives of the over-all regulatory scheme. Id.
 
 
 11
 The Board argues that the flow-through subsidy is in literal compliance with the statute because the money is paid to the certificate holder, Frontier. It further argues that the subsidy meets the "need" of Frontier because, unless Air Midwest is supported, it will stop flying to the three cities, and in that case Frontier will have to reinstitute service itself. In the Board's view, Frontier has a legally cognizable "need" to be protected against the activation of its contingent obligation to provide service.
 
 
 12
 "Need" within the meaning of § 406(b)(3) is not a mathematically precise term, but it has limits. Summerfield requires that it be the operating needs of the carrier to be subsidized, taken as a whole, and not the needs of any other entity or of any sub-unit of the carrier. In Trans World Airlines, Inc. v. CAB, 128 U.S.App.D.C. 126, 385 F.2d 648, 667 (1967), we said that in awarding subsidies, the Board "has a primary duty to the taxpayers, to pay out no more in subsidy than is currently needed to accomplish the purposes of Section 406." (emphasis added). The same opinion observed, "The focus of 406 need, as already noted, is to supply the year by year cash requirements for out-of-pocket expenses." 385 F.2d at 665-66 (emphasis added).
 
 
 13
 In light of the above, the Board erred in approving the flow-through subsidy. The Board wishes to pay Frontier not to reimburse it for expenses, but to keep Frontier from incurring expenses at all. Moreover, in calculating the amount to be paid the Board has reference only to the operating experience of Air Midwest. See J.A. at 25-37, 56. In wholly ignoring the financial condition of Frontier, the Board violated the dictate of Summerfield to look to the need of the carrier to be subsidized. What Frontier's need might be does not appear from the record, but it could be that Frontier as a whole is so successful that even if it were forced to resume service to Hutchinson, Great Bend, and Dodge City, it would not be able to show a need for subsidy.[3]
 
 
 14
 In any case, the Board has no power to subsidize Air Midwest nor any other non-certificated carrier. Even though the Board may have been correct in finding Air Midwest more efficient at serving the three Kansas cities than Frontier would be and even if, therefore, it is desirable to keep Air Midwest in that service, Congress has not given the Board power to pursue that end by giving public money to Air Midwest. The subsidy order, CAB Order 74-4-77, incorporating CAB Order 74-1-78, must be vacated and Air Midwest's request for subsidy must be denied.
 
 
 15
 Our disposition of the petition of ALPA makes it unnecessary for us to consider the petition in No. 74-1600, brought by Continental Trailways, Inc. and joined in by the National Association of Motor Bus Owners, which sought review of the same subsidy order and urged the same result.
 
 
 16
 The order under review is vacated and the cause remanded to the Civil Aeronautics Board with instructions to deny the request for subsidy for air service to Hutchinson, Great Bend, and Dodge City, whether sought by Air Midwest, Inc. or by Frontier Air Lines, Inc.
 
 
 17
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to Title 28 U. S. Code Section 292(d)
 
 
 [1]
 In ALPA v. CAB, supra, the standing of this same petitioner, asserting a like interest on behalf of its members, was not questioned
 
 
 [2]
 Section 406(a) reads:
 The Board is empowered and directed, upon its own initiative or upon petition of the Postmaster General or an air carrier, (1) to fix and determine from time to time, after notice and hearing, the fair and reasonable rates of compensation for the transportation of mail by aircraft, the facilities used and useful therefor, and the services connected therewith (including the transportation of mail by an air carrier by other means than aircraft whenever such transportation is incidental to the transportation of mail by aircraft or is made necessary by conditions of emergency arising from aircraft operation), by each holder of a certificate authorizing the transportation of mail by aircraft, and to make such rates effective from such date as it shall determine to be proper; (2) to prescribe the method or methods, by aircraft-mile, pound-mile, weight, space, or any combination thereof, or otherwise, for ascertaining such rates of compensation for each carrier or class of air carriers; and (3) to publish the same. (emphasis added)
 
 
 [3]
 At oral argument it was alleged that Frontier showed record profits in the past year